IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| T. D. MOBLEY, | : | |
| Plaintiff, | : | |
| v. | : | CASE NO.: 1:16-CV-141 (LJA) |
| DENNIS RAY LOGAN, *et al.*, | : | |
| Defendants. | : | |

## ORDER

On August 3, 2016, Plaintiff T.D. Mobley filed a Complaint for damages under 42 U.S.C. § 1983 alleging, among other things, that Defendant Hilton Brandful, a jail supervisor, in his individual capacity violated her rights under the Eighth and Fourteenth Amendments to the federal Constitution while Plaintiff was detained at the Pelham Jail, in Pelham, Georgia. Doc. 1 at 1-2. Plaintiff further alleged that Brandful violated her rights under the Fourth and Ninth Amendments to the federal Constitution and invaded her privacy in violation of Georgia law. Doc. 1 at 1-2, 7.

## BACKGROUND

On August 11, 2016, Brandful was served with a summons and a copy of Plaintiff's Complaint. Docs. 4-1 ¶ 3; 4-2; 4-3. Brandful failed to plead or otherwise defend the instant suit. *See* Docket. On October 24, 2016, the Clerk of Court entered default against Brandful. *Id.* On October 27, 2016, Plaintiff filed a Motion for hearing and Motion for Default Judgment against Brandful. Docs. 5 & 6. On May 4, 2017, the Court granted Plaintiff's Motion for Default Judgment against Brandful, finding that Plaintiff had established that Brandful violated both Plaintiff's privacy rights and her Eighth Amendment rights under the federal Constitution and that Brandful intruded upon Plaintiff's private affairs in violation of Georgia law. Doc. 7. On July 25, 2017, the Court held a hearing to determine the type and

amount of damages Plaintiff should recover from Brandful for his violation of her rights. Doc. 8.

## FINDINGS OF FACT

Based on the record and the testimony received at the hearing on July 25, 2017, the Court makes the following findings of fact: Plaintiff was detained at the Pelham Jail, in Pelham, Georgia from October 16, 2014 until March 31, 2015. One night in December 2014, Brandful scratched off concealing paint from the window in the women's dormitory and observed Plaintiff partially nude in the shower room. When Brandful caught the attention of the women in the shower, he proceeded to use hand motions indicating that he wanted to observe Plaintiff and the other inmates together in the shower room while naked. Thereafter, Brandful informed Plaintiff that he watched pornography on a monitor while observing Plaintiff and the other inmates in their dormitory. Brandful asked Plaintiff to emulate things he had seen from watching pornography.

Brandful continued to observe Plaintiff in the shower and repeatedly requested that Plaintiff perform naked with the other inmates while Brandful watched. Brandful directed Plaintiff and the other inmates to spank each other while Brandful watched and had Plaintiff expose her vagina so that Brandful could see her fully naked. This continued three or four nights per week during the three final months Plaintiff was detained at the Pelham Jail. As a reward for these performances, Brandful gave Plaintiff food that he brought from outside the Jail and allowed her to take cigarette breaks. On one occasion, Brandful told Plaintiff that he wanted to see an "outside Oreo cookie, ménage à trois in the shower" with Plaintiff, an African-American female, in the middle with two white female inmates next to her while they performed for Brandful. Plaintiff's sleep schedule was often arranged so that she was awake during the night shifts when Brandful worked so that she could perform for Brandful. Brandful controlled Plaintiff through the use of privileges. In order to avoid detection, Brandful directed Plaintiff to use "blind spots" in the Jail's camera system and told Plaintiff that if she reported Brandful that she would have no evidence against him. When confronted about the fact that what Brandful was making Plaintiff and the other inmates do was

2

improper, Brandful indicated that "[Plaintiff] might as well get in line and sue me with everybody else."

The Court finds that Brandful's willful misconduct against Plaintiff was motivated by malice, evil motive and intent and that Brandful acted to cause Plaintiff harm with reckless and callous indifference to Plaintiff's federally protected rights under the Eighth, Fourteenth, Fourth, and Ninth Amendments.

Plaintiff, who has a history of being abused by family members, is plagued by feelings of shame and conflicted about being made to perform for Brandful while also receiving extra privileges. Because of the news of Brandful's behavior with the inmates at the Pelham Jail, Plaintiff lives with the stigma of those three months. She has been contacted since her release by those in the community that knew she was detained where Brandful worked. Because of these contacts, Plaintiff is afraid for her physical safety, given that she perceives the area as a small town where everyone knows everyone and that family or friends of Brandful may blame Plaintiff for Brandful's conduct. Plaintiff has also discussed these events with a counselor, though she has obtained such counseling free of charge. Prior to news reports about Brandful, Plaintiff felt isolated and ashamed and did not tell others of the abuse she endured while under Brandful's authority.

## DISCUSSION

### I. Damages under § 1983

"[D]amages in tort cases are designed to provide compensation for the injury caused to [a] plaintiff by [a] defendant's breach of duty and Congress adopted this common-law system of recovery when it established liability for constitutional torts; thus, the basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Porter v. White*, 483 F.3d 1294, 1307 (11th Cir. 2007) (citation and punctuation omitted). "[A] § 1983 plaintiff [ ] may be awarded compensatory damages based on demonstrated mental and emotional distress, impairment of reputation, and personal humiliation." *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000). Further, a fact-finder "may assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or

3

callous indifference to the federally protected rights of others." *Lambert v. Fulton Cty.*, 253 F.3d 588, 597 (11th Cir. 2001) (citation and punctuation omitted).

Here, based on the findings of fact above, Plaintiff is awarded **$100,000.00** in compensatory damages against Brandful based on the personal humiliation and mental and emotional distress Plaintiff has suffered as a result of Brandful's violation of Plaintiff's Eighth Amendment and privacy rights under the federal Constitution. Because Brandful acted with callous indifference to Plaintiff's federally-protected rights and due to the need to deter Brandful and others in positions of power from abusing vulnerable persons such as Plaintiff, Plaintiff is awarded **$250,000.00** in punitive damages against Brandful.

### II. Damages under Georgia law

In a claim for intrusion upon a person's private affairs under Georgia law, "general damages are recoverable without proof of special damages." *Bullard v. MRA Holding, LLC*, 740 S.E.2d 622, 627 (Ga. 2013) (citation and punctuation omitted). "General damages are those which the law presumes to flow from any tortious act; they may be recovered without proof of any amount." O.C.G.A. § 51-12-2(a). "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "In a tort case in which the cause of action does not arise from product liability, if it is found that the defendant acted . . . with the specific intent to cause harm . . ., there shall be no limitation regarding the amount which may be awarded as punitive damages against an active tort-feasor but such damages shall not be the liability of any defendant other than an active tort-feasor." O.C.G.A. § 51-12-5.1(f).

Here, based on the findings of fact above, Defendant Brandful showed willful misconduct and malice and acted upon Plaintiff to cause her harm. Thus, Plaintiff is awarded **$100,000.00** in general damages and **$250,000.00** in punitive damages against Brandful based on his intrusion upon Plaintiff's private affairs.

### III. Attorney's fees

"In any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Plaintiff's attorney represents that he has a contingency fee agreement with Plaintiff for forty percent of the damages awarded in this case. Thus, the Court declines to award Plaintiff attorney's fees in addition to Plaintiff's other damages.

**SO ORDERED**, this 13th day of December, 2017.

                          /s/ Leslie J. Abrams
                         **LESLIE J. ABRAMS, JUDGE**
                         **UNITED STATES DISTRICT COURT**